# UNITED STATES

*v.*

# JULIO AYBAR ET AL.

. San Juan, Criminal, No. 1299.

OPINION AS TO GRAND JURORS.

Jury Commissioner—Qualifications of.
 1. It is not required by law that the clerk of the United States district court be an active member of any political party. If the

United States v. Aybar.

clerk be a Democrat, the other jury commissioner may be a Republican. Whether a Unionist declaring in favor of the ultimate independence of Porto Rico would make a legal jury commissioner need not be decided under the facts of this case.

Grand Jurors—Disqualification.

2. The indictment found is not for striking against the steamship companies, but for conspiring to limit the facilities for transportation of food and other necessaries, and the expression of opinion as to the strike does not disqualify grand jurors. It is not necessary that the grand jurors be unaffected by the strike.

Grand Jurors—Disqualification.

3. Porto Rico being an island dependent upon supplies from the mainland, it would be practically impossible to secure grand jurors who are not affected by the result of a strike affecting the shipping, nor does the law require it. Both grand and petit juries originally were bodies of persons knowing the facts of cases, and while the petit jury can no longer be witnesses of issues coming before them, this is not true of the grand jury, whose members are required to report any crime within their knowledge.

Grand Jury—Selection of—Lever Act.

4. The grand jury was not selected with any reference to the longshoremen's strike, and the instructions given related to what would be crimes under the Lever and similar acts.

Grand Jurors—Interrogation of.

5. The law on the ground of public policy does not permit the grand jurors to be interrogated as to their proceedings, but this does not prevent other evidence being produced of impropriety, if any.

Jury Commissioner—Qualifications.

6. Quære: Whether under existing political conditions in Porto Rico § 277 of the Judicial Code, requiring a jury commissioner to belong to an opposite political party to the clerk, is locally applicable to Porto Rico under § 9 of the Jones Act.

Opinion filed June 1, 1920.

Mr. Miles M. Martin, District Attorney, for United States.

United States v. Aybar.

*Mr. H. G. Molina* for defendants.

HAMILTON, Judge, delivered the following opinion:

The grand jury having found an indictment on May 24, 1920, against Julio Aybar and the other defendants hereto, charging a conspiracy to limit the facilities for transportation of necessaries, food, and the like, mentioning several acts supposed to be violated in the forming of that conspiracy, and in a second count charging force and intimidation for the same purpose, a motion is filed on behalf of the defendants to quash the grand and petit jury panel and the indictment. This is verified by one of the defendants, Aybar. It seems to be on information and belief, but the facts have been developed probably sufficiently to bring them pro or con before the court. The question comes up, therefore, whether the motion has been made out, and in considering that I will take up the five grounds mentioned.

1. The first is that the grand jurors were not properly selected and did not have the qualifications prescribed in § 275 of the Judicial Code, and several following sections, the special point being that the commissioner is not a well-known member of the principal political party in this district opposing that to which the clerk belongs. The other specifications in this court I do not think need be noticed, as it appears that the drawing was public within the eye of the law, that is to say, it was done publicly in the clerk's public office,—not his private office,— and in the front part thereof, and bystanders were called upon to witness that fact.

The point raised as to the political affiliations of the commis-

United States v. Aybar.

sioner is one of considerable interest. It seems to me that, carried to its legitimate conclusion, the argument would mean that the clerk would have to be a member of the Republican party or Unionist party here. When he was appointed it is only right to say that the court had no idea what party he belonged to, whether he belonged to any party, the only question being that of efficiency. I am quite sure that the law does not contemplate turning the court, especially such an important branch as the record department, over to a partisan. It cannot mean that it is necessary for an official to be a well-known member of the principal political party in this district; it certainly does not mean that, therefore, for the clerk. There are a good many men in our country,—and Porto Rico is a part of our country,—who unfortunately do not see their way clear to take an active part in political matters, sometimes a good many men stay away from the polls. Now to say that a man has to be an active partisan in order to hold this particular office is certainly not the meaning of the statute. The point now raised is that the jury commissioner must be a member of such a party, and the question is whether Mr. Walcott comes up to the legal specifications. He was appointed, because, so far as required by law, he is a well-known member of the Republican party. That was in the mind of the court at the time of the appointment, and nothing is shown that proves this to be incorrect. The only question is whether he is a member of the principal political party opposing that of the clerk. The clerk belongs to the Democratic party, and, for reasons it is unnecessary to go into, the Democratic party in Porto Rico is not organized to the extent of putting local candidates in the field and conducting a regular political campaign. There is nothing wrong about this

United States v. Aybar.

condition. It might from a public point of view be unfortunate, but still it is an admitted fact, and the argument now is that under these circumstances the clerk is practically a member of the Republican party. That argument is based upon the fact that the Democratic party, in a mass meeting within the past two or three weeks, have declared for a territorial form of government in Porto Rico. That declaration had not been made at the time of these appointments, and it would hardly be right to push back such a requirement ex post facto. But supposing that was true, nevertheless it cannot be said to make a Republican out of a Democrat. Someone has said that the Parliament of Great Britain is omnipotent except it cannot make a man out of a woman or a woman out of a man. It is almost as difficult to make a Democrat out of a Republican or a Republican out of a Democrat. A good citizen may be either one, but I doubt if a good citizen could be both. At all events the court is not prepared to go that length and say that because, on one particular issue, the members of the two parties would have to vote together, therefore in the eye of § 276 of the Judicial Code the clerk of this court is a Republican. As he has not admitted it himself, I am not prepared to draw that inference from the evidence.

Conditions may well require members of two parties to act together in local matters without giving up their essential convictions in other regards. I might instance the southern states of the Union, where many northerners have come to engage in business, and almost without exception the better class of them, whether Democrat or Republican, act with the Democrats on local issues. In other words, on questions of home and town and such local matters there is practically no difference between

United States v. Aybar.

good citizens. On the other hand, in the South, when it comes to a presidential election, these newcomers from the North divide according to their old convictions, whether Democratic or Republican. Porto Rico has her own local problems, but the principles governing human actions are the same in all parts of America.

It was suggested in argument that the Unionists, the dominant party in Porto Rico, have declared for independence and as seeking to de-Americanize the Island they cannot be considered a political party within the meaning of § 276 of the Judicial Code. This court has always been careful to avoid opinions upon political subjects, and especially upon local issues, and this motion does not make it necessary to declare whether a declaration in favor of ultimate independence of Porto Rico is or is not against the Federal law. That is a question which may come up, and should receive very careful consideration if it does come up; but it will not be anticipated. Whether the declarations in question represent the present views of the majority of the Unionist party is not itself clear. Nor is it necessary to determine whether a Unionist advocating independence would make a legal jury commissioner. That point will be settled whenever it arises.

There is no doubt that the Allies' declaration in favor of the rights of small nations has stimulated independence movements in many parts of the globe, and questions have arisen which must be handled with great care. Such declarations cannot be pushed too far, especially in favor of peoples who could not stand alone. There is an equally strong principle which is bound to be respected, and that is the rights of great nations. This means even more for the world and the happiness of man-

kind than the other, and methods must be found sooner or later to reconcile both.

2. It is argued that grand jurors under Judicial Code, § 277, should have been selected who are not affected by the strike, and therefore not biased by its results. If we are to take the strike into account, it would, in the judgment of the court, be practically impossible to find grand jurors in Porto Rico who are not affected one way or the other by its results. Bacalao and rice are two of the three or four foodstuffs used on the Island, and both are brought from the states or from abroad, and both come principally through the port of San Juan. San Juan is likewise the port of entry for clothing, building materials, and almost everything except a few local vegetables necessary to the life of Porto Ricans. Entries through Mayaguez and Ponce do not amount to half of those through San Juan, with the result that whatever affects San Juan affects the whole Island, and indeed it may be a question whether, when one adds the cost of transportation from San Juan to the interior, itself made more expensive by present conditions, the interior of the Island is not more affected by the strike in question than the people of San Juan itself. It is extremely doubtful whether grand jurors could be selected from other ports in the Island which would better conform to the requirements on the section in question than the grand jurors who brought this indictment.

Again, the political situation being as it is down here, it may very well be that this particular section is one of those mentioned in § 9 of the Jones Act as not locally applicable. And if it is necessary to the decision of this case, I would say that. But the discussion already had seems to be sufficient.

This second point, that the jurors returned and selected were

not returned from the part of this district most favorable to an impartial trial, but nearly all of them were taken from San Juan or the immediate vicinity, seems, therefore, to be based upon § 277 of the Judicial Code. In the first place I hardly think this applies to grand jurors, because it speaks of an impartial trial. Grand jurors have nothing to do with an impartial trial. They hear only one side of a case and can hardly be said to be conducting a trial or participate in a trial. It would appear that § 277 does not apply to grand jurors. But even if it did the result would be the same under the view taken of the facts. The jury commissioners, moreover, cannot know in advance what crimes will be brought before the grand jury they are drawing.

3. The third ground alleges that the great majority of the grand jurors were prejudiced against the defendants herein when they entered upon the discharge of their duty as such grand jurors, and that several of them had already expressed opinions to that effect. That the chairman, Mr. Graham, is a shipowner and employer of longshoremen at San Juan and interested in breaking the strike, and having expressed opinions to that effect, would seem to relate to prejudice. Different ones are mentioned, Davidson as a shipper of fruit, Hodgetts as an employer of tobacco laborers is prejudiced against labor unions, and has expressed opinions to the effect that the defendants were guilty of violation of the law. That Preston and Lee are employees of firms who represent steamship companies. That Gual and others are merchants who are affected by the strike; that Whiting, Cox, Middleton, and Nye are fruit growers, the shipment of whose fruit had been stopped as a result of the strike. That as a result of the strike the said grand jurors have

United States v. Aybar.

lost money and become prejudiced against the defendants. These are more serious charges, because they go into particulars. Now, does this disqualify grand jurors? Does it constitute a situation in which the court ought to quash the grand jury and also the petit jury panel? Do those facts, if facts, disqualify the grand jurors? I am not quite sure how far the facts are proved, but there is an affidavit on information and belief as to most of them, and it is admitted that Graham, if on the stand, would testify that he is interested in shipping and has been adversely affected by the strike.

In the first place, this indictment is not about the strike; these grand jurors have not found any indictment about the strike. They found an indictment, as noted above, that certain men unlawfully conspired to limit the facilities for transporting necessaries, foodstuffs, milk, flour, and so on. And I think the court was careful to tell the grand jury that they had nothing to do with the strike as such. In other words, it is true, and I think the charge to the grand jury was to that effect, that these defendants could strike all they wanted to; they could stay away from work if they were able to be supported without it, and so far as this court is concerned it has nothing to do with their not working. But there must be no interference with people who did want to work. These have a perfect right to work, and they should be protected in the right which is granted them by the Constitution and the common law. If the grand jurors had been alleged to have expressed an opinion on that subject, as to keeping others from work, that would have been another thing, but having expressed any opinion as to the strike itself is entirely immaterial to this indictment, because the indictment is not on that subject.

United States v. Aybar.

But then, going further, supposing their expressions of opinion had related to the subject of the indictment, would that disqualify them? What is the grand jury. The grand and petit juries had a common origin in the Inquest brought by William the Conquerer from Normandy. Normandy as a part of France received it from the Carolingians, and they in turn obtained it from the inquisitio of the Roman Empire. In England it was worked out so that the King would send his judges to the different counties of England to work with local officials, primarily to collect taxes and fines that were due him. From that was gradually evolved both forms of jury, and even the petit jury orginally were witnesses, they were nothing else but witnesses, selected because they were witnesses. The petit and the grand juries gradually became differentiated. To the petit jury were added real witnesses in the modern sense of the word, and then the petit jury was distinguished from the witnesses and so became an utterly different body, having nothing to do with knowing the facts of the case. We see that result enforced here every day. There was not such an evolution as to the grand jury, representing the public at large. If anyone of them knows of any crime that has been committed, it is his duty to inform the grand jury as a whole so that an indictment can be found. Is there anything wrong in the grand jurors having opinions on the strike and expressing them before they become grand jurors, even if the strike is conceded to be the subject of the indictment? I do not think so. If they knew that a criminal strike was on, it was their duty to tell the grand jury as a whole. If they were injured as a result of a criminal strike, it was their duty to notify the rest of the grand jury, and if there are a number of them on the grand jury in the

United States v. Aybar.

same condition there is no difference. The question is, Was a correct indictment found? Wrongful conduct on the part of the grand jurors would be this, not in indicting anyone who ought not to be indicted, but in declaring facts to exist which did not exist. In other words, the question is not as to the motive, but as to whether they arrived at a correct result. This affidavit so far as it is germane at all relates to the method of getting at the result and not to the result itself. I do not think the point is well taken.

4. The next ground alleged, No. 4, that the present grand jurors were ordered to be drawn May 3, a week after the long-shoremen's strike commenced, and were summoned for the expressed purpose of investigating the acts of these defendants. This court made an order for the summoning of the grand jury as at each term of court, and this had no reference whatever to the present strike,—quite apart from the fact that the indictment found has no relation to the strike. The grand jury was instructed as to the Lever Act and other acts whose violation would constitute a crime. This ground sets forth that in consequence of said instructions these grand jurors proceeded to find the present indictment. That would seem to allege that the court improperly instructed the grand jury. I cannot concede this at all. I do not know that it was so intended, but if so it certainly is not correct. The court instructed the grand jury what would constitute a violation of the Lever Act, and other crimes which might come before them were mentioned and described with some particularity. The court never intimated that these particular defendants had been guilty of this or any other crime. I do not know them.

5. The fifth ground is that the defendants respectfully show

that it has been impossible for them to secure affidavits to establish all these facts, and beg leave to call in open court the clerk, jury commissioner, the chairman, and several other members of the grand jury to be examined. That is hardly a ground for quashing the indictment of the grand jury, and so far as it is a prayer it is conceded that the facts claimed have all been brought out with the exception of bringing the chairman and members of the grand jury before the court. That will have to be refused, not because the court has any wish to keep the facts out of the case, but because of the great ground of public policy as to examining the grand jury as to their proceedings. It would put an end to their secrecy and end the value of the grand jury. The court is unwilling to do this. If this prejudice and so on spoken of has been expressed as claimed in the affidavit, it must have been expressed to somebody. Such somebody can be called. I would be very glad if the defendants wish to produce affidavits by 12 o'clock to-morrow of any statements of these grand jurors heard by anyone. My impression is that it would make no difference, as above mentioned. The grand jurors have kept within the scope of their duty and have shown no legal bias. What they have done is without injury to the defendants.

On the whole it seems to me that the motion to quash must be overruled, and it is so ordered. An exception is allowed to the defendants, who waive calling any further witnesses.